# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN ASSOCIATION FOR HOMECARE, 2011 Crystal Drive, Suite 725, Arlington, Virginia 22202 | ) ) ) ) | |
| and | ) ) | |
| ACE DRUG, INC., dba HOLLYWOOD MEDICAL SUPPLY, 2131 Hollywood Boulevard, Hollywood, FL 33020, | ) ) ) ) | |
| Plaintiffs, | ) ) | **Civil Action No. 1:08-cv-00992 (RMU)** |
| vs. | ) ) | |
| Michael O. LEAVITT, in his official capacity as Secretary of the Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201 | ) ) ) ) ) | |
| and | ) ) | |
| Kerry N. WEEMS, in his official capacity as Acting Administrator for the Centers for Medicare & Medicaid Services, Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201 | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF PLAINTIFFS'
## APPLICATION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................1

ARGUMENT ................................................................................................................1

I.     PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT THE
       REQUESTED RELIEF ........................................................................................1

       A.     Any Injury That Is Not Reparable by Money Damages Is Irreparable
              Injury ..........................................................................................................1

       B.     Plaintiffs Did Not Engage In Excessive Delay .........................................3

II.    THE JURISDICTION-STRIPPING PROVISIONS OF THE MMA DO NOT
       APPLY TO THIS ACTION ..................................................................................5

III.   ADMINISTRATIVE EXHAUSTION IS UNAVAILABLE AND NOT
       REQUIRED ..........................................................................................................8

IV.    PLAINTIFFS HAVE STANDING TO PURSUE THIS ACTION ....................9

V.     PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON
       THE MERITS .....................................................................................................12

CONCLUSION...........................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*,
469 F.3d 129 (D.C. Cir. 2006), *aff'd en banc*,
495 F.3d 695 (D.C. Cir. 2007), *cert. denied*,
128 S. Ct. 1069 (20084)..................................................................................................9, 10

*Amgen, Inc. v. Smith*,
357 F.3d 103 (D.C. Cir. 2004).......................................................................................6, 11

*Berkovitz v. United States*,
486 U.S. 531 (1988)...............................................................................................................5

*Boise Artesian Hot & Cold Water Co. v. Boise City*,
213 U.S. 276 (1909)...............................................................................................................2

*Bowen v. Mich. Acad. of Family Physicians*,
476 U.S. 667 (1986)...............................................................................................................5

*Carolina Med. Sales, Inc. v. Leavitt*,
No. 07-1298, 2008 WL 2446319 (D.D.C. June 19, 2008)...............................................6

*Clarke v. Office of Fed. Hous. Enter. Oversight*,
355 F. Supp. 2d 56 (D.D.C. 2004).....................................................................................5

*Donovan v. Pa. Co.*,
199 U.S. 279 (1905)...............................................................................................................1

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975)...............................................................................................................3

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)...............................................................................................................2

*Ethyl Corp. v. EPA*,
51 F.3d 1053 (D.C. Cir. 1995).............................................................................................5

*Hoffman-Laroche, Inc. v. Califano*,
453 F. Supp. 900 (D.D.C. 1978)......................................................................................1, 3

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
917 F.2d 75 (2d Cir. 1990)...................................................................................................1

*Jacksonville Port Auth. v. Adams*,
556 F.2d 52 (D.C. Cir. 1977) ...................................................................................5

*La. Envtl. Action Ass'n v. EPA*,
172 F.3d 65 (D.C. Cir. 1999) .................................................................................10

*Lee v. Christian Coal. of Am., Inc.*,
160 F. Supp. 2d 14 (D.D.C. 2001) ......................................................................2, 12

*Lepelletier v. FDIC*,
164 F.3d 37 (D.C. Cir. 1999) ...................................................................................3

*Mova Pharm. Corp. v. Shalala*,
140 F.3d 1060 (D.C. Cir. 1998) ...............................................................................5

*Mylan Labs., Inc. v. Leavitt*,
484 F. Supp. 2d 109 (D.D.C. 2007) ..........................................................................2

*Nat'l Lime Ass'n v. EPA*,
233 F.3d 625 (D.C. Cir. 2000) ...............................................................................10

*Nat'l Mar. Union of Am. v. Commander*,
824 F.2d 1228 (D.C. Cir. 1987) .............................................................................10

*Nat'l Wildlife Fed'n v. Andrus*,
440 F. Supp. 1245 (D.D.C. 1977) ...........................................................................15

*O'Donnell Constr. Co. v. Dist. of Columbia*,
963 F.2d 420 (D.C. Cir. 1992) .................................................................................4

*Palisades Gen. Hosp., Inc. v. Leavitt*,
426 F.3d 400 (D.C. Cir. 2005) .................................................................................5

*Sandoz, Inc. v. FDA*,
439 F. Supp. 2d 26 (D.D.C. 2006) ............................................................................2

*Shalala v. Ill. Council on Long Term Care, Inc.*,
529 U.S. 1 (2000).................................................................................................8, 9

*Sharp Healthcare v. Leavitt*,
No. 08-CV-170, 2008 WL 927891 (S.D. Cal. Apr. 4, 2008)......................................7

*Transmission Agency v. FERC*,
495 F.3d 663 (D.C. Cir. 2007) ...............................................................................11

*Va. Petroleum Jobbers Ass'n v. FPC*,
259 F.2d 921 (D.C. Cir. 1958) ..........................................................................15

*Wis. Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ............................................................................3

## STATUTES AND REGULATIONS

15 U.S.C. § 632(a)(2)(C) ....................................................................................14

42 U.S.C. § 405(h) ...............................................................................................8
42 U.S.C. § 1395hh .............................................................................................13
42 U.S.C. § 1395ii ................................................................................................8
42 U.S.C. § 1395w-3(b) ............................................................................5, 7, 8, 12

42 C.F.R. § 405.904 .............................................................................................8
42 C.F.R. § 405.906 .............................................................................................8
42 C.F.R. § 414.414(d) ......................................................................................13
42 C.F.R. § 414.418 ...........................................................................................11

72 Fed. Reg. 17,992 (Apr. 10, 2007) ................................................................11

## OTHER AUTHORITY

Medicare DMEPOS Competitive Bidding Program, Tip Sheet for Referral Agents (June 2008), *at* http://www.cms.hhs.gov/DMEPOSCompetitiveBid/Downloads/
DMEPOS_Referral_Agent_Tip_Sheet.pdf.................................................................3

# INTRODUCTION

The Defendants' Opposition to Plaintiffs' Application for Preliminary Injunction ("Gov't Opp.") fails. The Defendants' scattershot opposition—raising every conceivable argument regarding jurisdiction, irreparable injury, Article III standing, prudential standing, associational standing, and exhaustion—betrays the weakness in their position. The bottom line is that Defendants clearly violated both the Medicare Modernization Act ("MMA") and Small Business Act ("SB Act"), and on July 1, 2008, Ace Drug and other members of AA Homecare will suffer the irreparable injury of wholesale exclusion from providing durable medical equipment in certain competitive bidding areas ("CBAs") because of the Defendants' unlawful acts. A preliminary injunction should issue to maintain the *status quo ante* until this Court can reach final resolution on these questions.

# ARGUMENT

## I. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT THE REQUESTED RELIEF.

### A. Any Injury That Is Not Reparable by Money Damages Is Irreparable Injury.

The Defendants' conception of irreparable injury as requiring a showing of economic destruction is simply wrong. Gov't Opp. 16-19. Any injury that is not reparable by money damages is irreparable injury. *E.g.*, *Donovan v. Pa. Co.*, 199 U.S. 279, 305 (1905) ("irreparable injury" is injury for which "no fair or reasonable redress can be had therefor in a court of law") (internal quotation marks omitted); *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("Irreparable injury is one that cannot be redressed through a monetary award."); *Hoffman-Laroche, Inc. v. Califano*, 453 F. Supp. 900, 903 (D.D.C. 1978) (economic injury in the form of loss of sales and market share constitutes irreparable injury if there is "no adequate compensatory or other corrective relief will be available at a later date") (internal quotation

marks omitted).[1]  The irreparable injury requirement emerged as one of the heads of equity

jurisdiction, and has always been simply a threshold requirement to proceed in a court of equity

rather than law.  *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 285 (1909).

Indeed, since irreparable injury is also a factor in the test for a permanent injunction, *see, e.g.,*

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), there would be little left of the

district court's equitable powers if injunctions could only issue upon a showing of economic

destruction, as the Defendants contend.  Accordingly, a preliminary injunction is authorized

upon any showing of injury unredressable at law; the nature and extent of that injury then

becomes one of the equitable factors that this Court weighs in deciding whether to grant the

injunction.  *Cf. Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 26 (D.D.C. 2001)

(Urbina, J.) ("[A] particularly strong showing on one factor may compensate for a weak showing

on one or more of the other factors. . . .  A strong showing of likely success on the merits may

warrant issuance of preliminary injunctive relief even if the plaintiff makes a less compelling

showing on the other three factors.").

　　　　The Plaintiffs have incontrovertibly shown injury unredressable by money damages.

First, the denial of a statutory right by the Government, where no action in damages is available

against the Government, is itself irreparable injury.  PI App. 36-37.  Second, AA Homecare and

Ace Drug have alleged substantial economic injury for which they have no redress in damages.

*See id.* at 36-39.  The Government does not contest that Ace Drug and AA Homecare members

who were unsuccessful bidders will be wholly and immediately excluded from supplying items

in Round 1 CBA market categories as of July 1, 2008, and that the cumulative loss of revenue

---

[1] To the extent *Sandoz, Inc. v. FDA*, 439 F. Supp. 2d 26, 31-32 (D.D.C. 2006) and *Mylan Laboratories, Inc. v. Leavitt*, 484 F. Supp. 2d 109, 123 (D.D.C. 2007), hold to the contrary, they are inconsistent with higher precedent and may not be followed.

will be substantial. *Cf.* Gov't Opp. 1 (touting expected reduction in payments to DMEPOS

Medicare suppliers by $1 billion annually).[2]  They do not contest that it will be impossible for

the interim economic loss to be recovered even if Plaintiffs eventually prevail on the merits.

Although the D.C. Circuit has established destruction of a business as the test of irreparable

injury when money damages are available, *see, e.g., Wis. Gas Co. v. FERC*, 758 F.2d 669, 674

(D.C. Cir. 1985) (per curiam), that is *not* the standard for all economic injury.  *See, e.g.,*

*Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999) (holding that "the denial of a business

opportunity satisfies the injury requirement"); *see also Doran v. Salem Inn, Inc*., 422 U.S. 922,

932 (1975). ("substantial loss of business" constitutes an irreparable injury); *Hoffman-Laroche*,

453 F. Supp. 900.  The Plaintiffs have shown irreparable injury.

## B.    Plaintiffs Did Not Engage In Excessive Delay.

The Defendants claim that the Plaintiffs delayed filing suit for more than a year after the

Final Rule was issued by the Defendants and thus cannot establish irreparable injury.  Gov't

Opp. 14-16.  This argument is fallacious.  The Defendants did not announce the Medicare

contract awards for Round 1 until May 19, 2008.  Plaintiffs thus filed their suit only 21 days after

the awards of contract suppliers for Round 1 were announced.  Had the Plaintiffs filed for a

preliminary injunction before it was known whether Ace Drug or AA Homecare's other

members would have suffered exclusion from any CBA-product category or diminished revenue,

the Defendants undoubtedly would have protested that the Plaintiffs cannot establish standing,

much less irreparable injury.  Indeed, the Defendants in related cases have argued lack of

---

[2] Indeed, the Defendants have already begun sending out "tip sheets" to referral sources advising
that physicians, social workers, pharmacists and home health agencies that refer Medicare
beneficiaries for DMEPOS services "should inform the beneficiary of . . . the need to obtain the
item from a *contract supplier*."  Medicare DMEPOS Competitive Bidding Program, Tip Sheet
for Referral Agents 2 (June 2008), *at* http://www.cms.hhs.gov/DMEPOSCompetitiveBid/
Downloads/DMEPOS_Referral_Agent_Tip_Sheet.pdf (emphasis added).

ripeness and standing when suit was brought before the winners for Round 1 had been announced.[3]  Moreover, Medicare suppliers do not lightly bring suit against the agency that governs them; it is reasonable for suppliers to bring suit only when the nature and extent of their injury, and the full array of legal challenges available to them, become known.

Second, Defendants' contention that Plaintiffs should have challenged the Final Rule immediately upon promulgation is unsound.  Plaintiffs have challenged the Final Rule because that ended up being the Defendants' only regulatory implementation of the Competitive Acquisition Program.  But the Defendants were not bound to have specified financial standards in the Final Rule issued on April 10, 2007; they could have conducted a subsequent, supplemental notice-and-comment rulemaking.  Had the Plaintiffs sought a preliminary injunction immediately upon promulgation of the Final Rule, without waiting to see if the Defendants were subsequently to specify financial standards, the Defendants would no doubt have contested that application as premature.

Third, the Plaintiffs have sought an injunction against not only Round 1 but Round 2, and the Plaintiffs can hardly be faulted for excessive delay when Round 2 implementation has yet to begin.  There is no inequitable delay that affects the balancing of equities.  To the contrary, the D.C. Circuit has held that the balance of the equities favors an applicant that only seeks to have the court enforce a right or principle guaranteed by statute.  *O'Donnell Constr. Co. v. Dist. of Columbia*, 963 F.2d 420, 429 (D.C. Cir. 1992).  The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate."  *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *see*

---

[3] *See, e.g.*, Ex. A (Mem. in Supp. of Defs.' Mot. To Dismiss at 8-9 & 14-15, *Hewitt v. Leavitt*, No. 3:07-CV-1038 (EK) (N.D. Tex. filed Sept. 12, 2007)); Ex. B (Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss at 15-21, *Premier Med. Supplies, Inc. v. Leavitt*, No. 1:07-CV-3809 (N.D. Ohio filed Feb. 19, 2008)).

*also Clarke v. Office of Fed. Housing Enter. Oversight*, 355 F. Supp. 2d 56, 66 (D.D.C. 2004) (noting a "substantial public interest" in ensuring that a federal agency "acts within the limits of its authority"); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1062-66 (D.C. Cir. 1998). *See generally Berkovitz v. United States*, 486 U.S. 531, 544 (1988) ("The agency has no discretion to deviate" from the procedure mandated by its regulatory scheme.).

## II.    THE JURISDICTION-STRIPPING PROVISIONS OF THE MMA DO NOT APPLY TO THIS ACTION.

The Defendants vainly argue that 42 U.S.C. § 1395w-3(b)(10) renders this Court powerless to review the Secretary's violation of explicit Congressional mandates, including the mandates that provide the authority to implement the CAP in the first place. The Defendants suggest that the provision must be read broadly to exclude all judicial challenges related to the DMEPOS program, even those that do not fall squarely within one of the six enumerated categories. This argument violates the maxim of *expressio unius est exclusio alterius* (mention of one thing implies exclusion of another thing). *See, e.g.*, *Ethyl Corp. v. EPA*, 51 F.3d 1053, 1061 (D.C. Cir. 1995). Because Congress expressly listed six specific agency actions that it intended to insulate from judicial review, the only reasonable conclusion is that judicial review is permitted as to all other actions, especially actions otherwise mandated by statute. This conclusion is fortified by the "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). The very cases Defendants cite to support the proposition that the Medicare Act's jurisdiction-stripping provisions "have consistently [been] given effect," Gov't Opp. 21, actually demonstrate that Courts narrowly construe the language in those provisions, and find that all judicial review is precluded only where there is clear and convincing evidence of Congressional intent to foreclose the specific claim at issue. *See, e.g.*, *Palisades Gen. Hosp., Inc. v. Leavitt*, 426 F.3d 400, 405

(D.C. Cir. 2005) (42 U.S.C. § 1395ww(d)(10)(C)(iii)(II) bars hospitals from challenging a reclassification decision, but "'leaves hospitals free to challenge the *general rules* leading to denial.'"); *Amgen, Inc. v. Smith*, 357 F.3d 103, 112 (D.C. Cir. 2004) (judicial review is "favored" if the stripping language is "'less than absolute,'" and is clearly permitted for actions exceeding statutory authority).

This Court hewed to the plain language of subsection (b)(10) in *Carolina Medical Sales, Inc. v. Leavitt*, No. 07-1298, 2008 WL 2446319 (D.D.C. June 19, 2008). Review in that case was barred because the Secretary's discretionary actions at issue were both permitted by the MMA and were foreclosed by the specific language of two subsections of § 1395w-3(b)(10). The Court carefully analyzed, and rejected, the plaintiff's contention that a bar on review of the Secretary's selection of items would not extend to the selection of items based on delivery method. *Id.* at *5-8. This Court thus required the agency action to be squarely within one of the six express prohibitions on judicial review.

Equally unavailing are Defendant's alternative arguments that their challenged actions fall within specific categories of § 1395(b)(10)(B) & (F). First, they contend that their violations are sheltered from review by Section 1395w-3(b)(10)(B), which forbids review of "the awarding of contracts under this section." Plaintiffs proposed construction of this category as immunizing any step antecedent to a contract award would swallow the entire statute; every aspect of the program is antecedent to contract awards.

The proper construction, consistent with the strong presumption against foreclosure of judicial review, and with Congress's choice to immunize only specific acts and not the entire competitive acquisition program, is that this category clearly refers to the actual award of contracts in specific product categories in the various CBAs. This also accords with

congressional purpose of preventing fact intensive suits in which every disappointed bidder in every product category in every CBA litigates whether they should have been selected. Even if, *arguendo*, the *application* of financial standards to determine the eligibility of an individual bidder in a CBA product category is part of the awarding of a contract, the *specification* of financial standards (mandated to occur by notice-and-comment rulemaking) occurs prior to the process of contract awards, and does not fall within this category. Allowing such a challenge does not embroil Defendants in repetitive, fact-intensive litigation. The Defendant's *failure* to specify financial standards in observance of law, like the failure to publish both financial and "small supplier" standards for notice and comment, is not immunized from judicial review.

The Defendants also argue that review is barred by 42 U.S.C. § 1395w-3(b)(10)(F), which forbids review of "the bidding structure and number of contractors selected under this section." Once again, this statutory category protects from administrative or judicial challenge the Secretary's discretionary decision as to how to conduct bid solicitation, evaluation, and selection in any given CBA. The Plaintiffs do not challenge any of the "procedures or process that bidders must follow." *See Sharp Healthcare v. Leavitt*, No. 08-CV-170, 2008 WL 927891, at *2-3 (S.D. Cal. Apr. 4, 2008). The Defendants' discretionary authority over bidding procedures and structure is wholly distinct from their obligation to specify the basic ground rules that the statute requires to be undertaken by notice-and-comment rulemaking procedures (namely, the specification of financial standards and the selection of a size standard for "small supplier" that departs from SBA regulations). Moreover, nothing in subsection (b)(10) manifests any congressional intent to foreclose judicial scrutiny of whether Defendants complied with independent statutory obligations (such as the SB Act).

7

Finally, the Defendants failed to respond to the Plaintiff's argument that, even if some of the claims at issue here appear to fall within one of the categories barred from review, the jurisdictional inquiry "merges with consideration of the legality of the agency's action."  PI App. 44 (quoting *COMSAT Corp v. FCC*, 114 F.3d 223, 224 (D.C. Cir. 1997)).  Because Defendants' actions violated the MMA, the very same statute which supposedly precludes review, their actions were not taken "under" the MMA and therefore judicial review is not barred.  The Defendants fall far short of their burden of providing clear and convincing evidence that Congress intended no judicial review over the specific claims involved in this suit.

## III.    ADMINISTRATIVE EXHAUSTION IS UNAVAILABLE AND NOT REQUIRED.

The Defendants also argue that all claims not barred by 42 U.S.C. § 1395w-3(b)(10) must be "exhausted" pursuant to *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000) and 42 U.S.C. §§ 405(h) & 1395ii.  *See* Gov't Opp. at 25.  In *Illinois Council*, the Court explicitly reaffirmed the holding of *Bowen* that § 405(h) applies to Medicare cases only where the plaintiff's claims can be channeled through the agency, but not where the agency provides "no review at all."  *Ill. Council*, 529 U.S. at 19.  Here, as in *Bowen*, § 405(h) does not apply because the Medicare Part B regime provides no recourse for the plaintiffs.

The Defendants' reference to 42 C.F.R. §§ 405.904 & 405.906 is an irrelevant distraction.  Suppliers can only obtain a determination if they "ha[ve] accepted assignment for items or services furnished to a beneficiary that are at issue in the claim."  42 C.F.R. § 405.906(a)(2).  But DMEPOS suppliers who are not awarded contracts are completely ineligible to submit reimbursement claims or to receive payment for covered DMEPOS items. This restriction flows not from the jurisdiction stripping provisions of 42 U.S.C. § 1395w-3(b)(10), but from the exclusive nature of the contracts under 42 U.S.C. § 1395w-3(b)(6)(A) ("[P]ayment shall not be made . . . unless . . . the Secretary has awarded a contract to the

contractor for such items and services under this section."). Unless this Court issues an injunction, beginning July 1, 2008, unsuccessful bidders will no longer be eligible for assignment of a CBA beneficiary's right of reimbursement for covered items, in part because the beneficiaries themselves will not have any right to reimbursement for items received from non-contract suppliers. As such, AA Homecare's members will be foreclosed from pursuing relief before the agency. Additionally, unlike the plaintiff organization in *Ill. Council*, AA Homecare has established direct injury in addition to its members' injury. *See infra* at 9-10. It is undisputed that AA Homecare itself has no opportunity to seek relief before the agency. *Cf. Ill. Council*, 529 U.S. at 24 (association asserting third-party standing had to avail itself of available administrative remedies) Because the agency provides no administrative recourse to the Plaintiffs, 42 U.S.C. § 405(h) does not apply.

## IV. PLAINTIFFS HAVE STANDING TO PURSUE THIS ACTION.

The Defendants' standing arguments betray desperation. Gov't Opp. 27-34. The Defendants initially argue that AA Homecare does not have direct standing to sue, citing cases that find no direct injury where an organization chooses to bring suit or change its lobbying practices. Gov't Opp. 28. However, Plaintiffs' Complaint does not allege injury because AA Homecare has brought suit and lobbied to change the Defendants' statutory violations. Instead, Plaintiffs alleged that because the Defendants' failure to comply with the laws has "created confusion among AA Homecare's membership, AA Homecare has had to *devote substantial resources to its members struggling with the Final Rule as enacted as well as in preparing bids*." Compl. ¶¶ 61, 77 (emphasis added). The allegations in Plaintiffs' Complaint are no different from the allegations in *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006). In that case, the D.C. Circuit held that an organization had direct standing to sue where the complaint alleged that "[t]he challenged

regulations have caused a drain on [the organization's] resources and time because the organization has had to *divert significant time and resources* from [its regular] activities *toward helping its members* and the public *address the unduly burdensome requirements that the FDA imposes on experimental treatments*." *Id.* at 132-33 (emphasis added), *cited in* PI App. 14. The Defendants tellingly omit any reference to *Eschenbach*. AA Homecare clearly has direct standing to sue.

The Defendants also claim that AA Homecare does not have associational standing because its members have conflicting interests. Gov't Opp. 29. However, the D.C. Circuit has repeatedly rejected that argument. *See, e.g.*, *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636-37 (D.C. Cir. 2000) (association permitted to challenge regulation even though some members were also members of another organization intervening to support the regulation); *La. Envtl. Action Ass'n v. EPA*, 172 F.3d 65, 68 (D.C. Cir. 1999) ("[S]uch a conflict of interest within an organization does not deprive the organization of representative standing if no internal procedural violation has been shown."); *Nat'l Mar. Union of Am. v. Commander*, 824 F.2d 1228, 1233-34 (D.C. Cir. 1987) (recognized by the Defendants at Gov't Opp. 29). But even if the conflict test were to apply, there is factually no conflict. As explained in the PI App. 38-39, every AA Homecare member is potentially injured if the threshold for what constitutes a small supplier is too low.

The Defendants also claim that Plaintiffs lack standing because "plaintiffs do not assert that Ace Drug or any AAHomecare member was denied a contract under the competitive bidding program because they failed to meet financial standards." Gov't Opp. 30. However, Plaintiffs' claim is not that Plaintiffs were disqualified, but that Plaintiffs' bids were denied in favor of other bidders who were never evaluated against the financial standards that the MMA requires

the Secretary specify and find that winning suppliers meet. Ace Drug and AA Homecare's members, as suppliers excluded as of July 1 from certain CBA product markets, certainly have standing to challenge the defective process that resulted in that exclusion. The Defendants also state that suppliers with total annual revenue between $3.5 and $6.5 million "do not actually stand to gain anything if the definition" were the SB Act definition. *Id.* at 31. However, besides the 30 percent target available only for "small suppliers," only small suppliers are allowed to form networks for bidding purposes, accruing yet another potentially huge benefit. 72 Fed. Reg. 17,992, 18,058-61 (Apr. 10, 2007); 42 C.F.R. § 414.418. In any event, Plaintiffs' challenge is to the agency's failure to observe mandatory procedure, not to the substance of the standard.

Finally, the Defendants argue that Plaintiffs "fail to meet prudential standing requirements" because the injuries "do[ ] not fall within the zone of interests protected by the MMA." Gov't Opp. 32. This Court should reject the Defendants invitation to make the same error that was reversed in *Amgen*. "'[T]he zone of interests test is not meant to be especially demanding,'" *Amgen*, 357 F.3d at 108 (alteration omitted) (quoting *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 399 (1987)), and Plaintiffs clearly satisfy the requirement. First, suppliers are the entities directly regulated in the MMA's CAP, and directly regulated entities are always within the zone of interests. *Transmission Agency v. FERC*, 495 F.3d 663, 670 (D.C. Cir. 2007) (to satisfy the requirements of prudential standing, a plaintiff must show that the injury he alleges falls within the "'*zone of interests to be* protected or *regulated by the statute*'") (emphasis added). Second, "[p]arties motivated by purely commercial interests routinely satisfy the zone of interests test." *Amgen*, 357 F.3d at 109. Third, Plaintiffs are attempting to police the very same interests expressed by Congress in the MMA, such as the interest in ensuring that only those suppliers deemed fiscally sound under publicly specified, objective financial standards obtain

11

exclusive contracts to supply products, and in protecting the interests of small suppliers (as lawfully defined).  Moreover, Plaintiffs are within the zone of interests of the SB Act because Ace Drug and other members of AA Homecare are small businesses as defined by the SB Act.

## V.    PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

This Court has recognized that, with regard to likelihood of success on the merits, it "'is not required to find that ultimate success by the movant is a mathematical probability, and indeed, [the court] may grant [an injunction] even though its own approach may be contrary to the [the movants'] view of the merits.'"  *Lee*, 160 F. Supp. 2d at 26 (Urbina, J.) (alterations in original).  Plaintiffs more than meet this standard, and in response Defendants muster no colorable defense on the merits.

The MMA unequivocally mandates that "[t]he Secretary may not award a contract to any entity" unless "the Secretary finds," *inter alia*, that "[t]he entity meets applicable financial standards specified by the Secretary, taking into account the needs of small providers."  42 U.S.C. § 1395w-3(b)(2)(A)(ii).  The Defendants cannot satisfy this statutory financial standards mandate by vague references to observing a "general rubric" of financial soundness.  Gov't Opp. 35-36.  The plain meaning of "financial standards" refers to objective levels or benchmarks of financial performance or condition against which a bidder can be compared, and that the Secretary can "find" that the bidder "meets" or does not meet.  Defendants offer no alternative meaning.  Indeed, the Defendants have admitted that the Secretary has not yet specified financial standards, notwithstanding that the MMA has mandated that these standards had to be specified *before* any contracts could be awarded, so that each individual bidder could be tested against those standards: "CMS is in the early stages of determining the best and most accurate indicators of a DMEPOS supplier's financial stability and economic viability."  *Id.* at 36.  The Defendants

have thus effectively admitted that suppliers in Round 1 were awarded contracts without "meet[ing] applicable financial standards specified by the Secretary" as required by the MMA.

The Defendants also concede that 42 U.S.C. § 1395hh(a)(2)—which requires that any "rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing . . . the eligibility of individuals, entities, or organizations to furnish or receive [Medicare] services or benefits" be promulgated through notice-and-comment rulemaking—applies to financial standards.  Gov't Opp. 37-38.  The Defendants nonetheless argue that since the Final Rule "did go through notice-and-comment rulemaking," this rule has been satisfied and the Plaintiffs are "confused" about their own claim.  *Id.* at 38.  The confusion is theirs.  The Plaintiffs' claim is that *actual* financial standards had to be promulgated under notice and comment procedures because they determine the eligibility of entities to furnish Medicare services.  There is a regulation bearing the label "Financial standards" but stating only that financial documentation would be "specified in the request for bids."  42 C.F.R. § 414.414(d).  But CMS does not comply with the statutory mandate to test bidders against "financial standards" simply by requiring submission of financial data.

CMS next argues that it "announced through an electronic listserv transmission the financial measures it would use to evaluate bids."  Kuespert Decl. ¶ 27 (citation omitted); Gov't Opp. 37.  The listed financial ratios are not financial standards, but even if they were, they would be unlawful because they were applied to determine supplier eligibility to furnish benefits without notice-and-comment rulemaking.  Because no financial standards have been published for notice and comment, the Defendants have violated 42 U.S.C. § 1395hh.

Finally, the Government cannot claim that it needed more time to ponder what standards are appropriate. The statute is clear: the Secretary must specify, and then apply, financial standards, before any contract is awarded.

The Defendants fare no better in defending their "small supplier" regulation under the SB Act, which forbids federal agencies from using different size standards for categorizing small business concerns from that defined by the Small Business Administration unless it sets alternate standard for public notice and comment, uses statutorily enumerated factors, and receives specific approval from the SBA Administrator. 15 U.S.C. § 632(a)(2)(C)(i), (ii).

Defendants make the untenable claim that the SB Act applies only if a federal statute or a federal agency uses the talismanic words "small business" or "small business concern." Gov't Opp. 40. If that were so, federal agencies could routinely evade the SB Act by linguistic maneuvers. The Customs Service could evade the rule by proposing a regulation for "small importers"; the Bureau of Mines could do so for "small mining companies"; the Department of Housing and Urban Development could develop rules for "small landlords." The relevant question is not what label the federal agency or statute uses, but the nature of the categorization that the federal agency undertakes. Here, the categorization of some Medicare suppliers as "small suppliers" involves "categorizing a business concern as a small business concern," 15 U.S.C. § 632(a)(2)(C)(i), (ii), and accordingly the SB Act mandates the procedures that Defendants had to follow if they intended to depart from an SBA standard.

The Defendants were specifically "remind[ed]" by the U.S. House of Representatives Committee on Small Business "that should [the Defendants] adopt a different size standard, [they] will need to comply with the procedural requirements of [the SB Act]." PI App. Ex. 31, at 5, *quoted at* PI App. 31. Indeed, Defendants effectively acknowledged the applicability of the SB

Act when they sought and were granted the approval of the SB Administrator for their standard. However, Defendants never proposed their alternative size standard for notice and comment before adoption, and hence they violated the clear commands of the SB Act.

The Defendants also try to argue in the alternative that the Defendants complied with the SB Act because "notice and comment ha[d] already occurred." Gov't Opp. 42-43. That argument is unavailing because as the Defendants concede, "the Proposed Rule 'proposed' that CMS would use the SBA small business definition" instead of an alternative definition. *Id.* at 42. There can be no notice and comment on an alternative definition as required by the SB Act if the alternative standard is never published for notice and comment.

In this case where the Defendants have flouted Congress's mandates, the likelihood of success on the merits is sufficient to warrant the granting of a preliminary injunction notwithstanding the Plaintiffs' showing on the other three factors. *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam); *Nat'l Wildlife Fed'n v. Andrus*, 440 F. Supp. 1245, 1256 (D.D.C. 1977).

## CONCLUSION

For the reasons explained in Plaintiffs' Application for a Preliminary Injunction, and as set forth above, this Court should grant a preliminary injunction ordering the Defendants to cease the implementation of the CAP and preventing any future application of the CAP under the Final Rule, until the Defendants comply with the MMA, SB Act, and APA.

Dated:  June 26, 2008                        Respectfully submitted,


                                             /s/ Stephen B. Kinnaird
                                             Stephen B. Kinnaird (454271)
                                             Robert Fabrikant (198119)
                                             Ileana Maria Ciobanu (499413)
                                             SIDLEY AUSTIN LLP
                                             1501 K Street, N.W.
                                             Washington, D.C. 20005
                                             (202) 736-8000

                                             Attorneys for Plaintiffs
                                             American Association for Homecare and Ace
                                             Drug, Inc., dba Hollywood Medical Supply

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

GREGORY HEWITT, et al.,

       Plaintiffs,

    v.

MICHAEL O. LEAVITT, Secretary of the
Department of Health and Human Services,
et al.,

       Defendants.

Civil Action No. 3:07-CV-1038 (EK)

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

OF COUNSEL:
DANIEL MERON
General Counsel

MARK D. POLSTON
Deputy Associate
General Counsel for Litigation

LINDA KEYSER
MARCUS CHRIST
Attorneys
Department of Health
and Human Services

PETER D. KEISLER
Assistant Attorney General

RICHARD B. ROPER
United States Attorney

SHEILA M. LIEBER
ELIZABETH JAY KELHOFFER
Department of Justice
20 Massachusetts Avenue, N.W., Room 7324
Washington, D.C.  20530
Tel: 202-514-4964
Fax: 202-616-8470
*Attorneys for Defendants*

As part of the "case or controversy" requirement, plaintiffs must have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. at 559-60; *see also Clinton v. City of New York*, 524 U.S. 417, 429 (1998). "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth*, 422 U.S. at 498; *see also Bonds v. Tandy*, 457 F.3d 409, 411-12 (5th Cir. 2006). The "standing inquiry [is] especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the federal government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997) (citations omitted). "The plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing these elements." *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 318-19 (5th Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)).

A. **Plaintiffs Lack Constitutional Standing Because They Have Failed to Demonstrate That They Have Suffered a Concrete and Immediate Injury In Fact.**

Plaintiffs speculate about potential injuries that might befall them once the DMEPOS competitive bidding program is implemented. However, because it has not been implemented — indeed, the bids are not yet due — they cannot conceivably present an actual injury. To meet the "irreducible constitutional minimum of standing" a plaintiff must demonstrate that he has suffered an "injury in fact" that is "fairly traceable" to the conduct of the defendant and which is "redressable by a favorable decision" of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61. The alleged injury must be concrete and particularized as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (threat of injury must be "real and immediate"). Here, the Plaintiffs have not alleged injuries that are actual or imminent, nor could they do so.

Plaintiffs' alleged injuries are purely speculative. The DMEPOS supplier Plaintiffs argue that there is a possibility that they will not be awarded contracts to provide DMEPOS under the competitive bidding program and that it will be "difficult or impossible" to compete in the bidding program. *See* Compl. at ¶¶ 42, 44, 47. Likewise, the Medicare beneficiary Plaintiffs speculate that suppliers who win contracts "*may be* unable" to provide them with necessary goods and services, *see* Compl. at ¶ 31 (emphasis supplied), and that there is a "high likelihood" that this will occur, *see* Compl. at ¶ 39.

Plaintiffs' allegations of injury never transcend conjecture. The bidding process for contracts under the program is not yet complete and no contracts have been awarded. *See* CMS, Competitive Acquisition for DMEPOS, Overview, Important Messages, *available at* http://www.cms.hhs.gov/CompetitiveAcqfor DMEPOS/. Aside from the Plaintiff-suppliers' voluntary choice of whether to submit a bid, they remain unaffected by the program. Moreover, the DMEPOS supplier Plaintiffs do not even attempt to clarify whether the supposed barriers to competition that they allegedly may encounter are merely "difficult" or in fact "impossible" to overcome. *See* Compl. at ¶¶ 42, 44, 47. Both the statute and the regulations protect the interests of small suppliers and allow them to compete in the bidding process. *See* 42 U.S.C. § 1395w-3(b)(2)(A)(ii) (requiring the Secretary to take into account small providers' needs in developing financial standards that must be met by small providers); § 1395w-3(6)(D) (requiring the Secretary to take appropriate steps to ensure that small suppliers are considered in the competitive bidding program); *see also* 42 C.F.R. § 414.414(g) (creating special rules for participation in the competitive bidding program by small suppliers, including setting a target

plaintiff's interest in "maximizing its profits, apparently by avoiding competition with other manufacturers" would "be more likely to frustrate than to further statutory objectives," his interests are outside the statute's "zone of interests" and he lacks prudential standing).

Congress enacted Section 302 of the MMA to counteract the waste, fraud, and abuse that were found to be present under the previous DMEPOS fee schedule payment method. *See* H.R. Rep. No. 108-178 (II), at Title III § 302; *accord* Compl. at ¶ 7. The statute is not intended to (nor does it) guarantee DMEPOS suppliers an expected return on their business investments, as the supplier-Plaintiffs seem to think. *Green v. Cashman*, 605 F.2d 945, 946 (6th Cir.1979) ( "We do not find in the statute authorizing Medicare ... any legislative intention to provide financial assistance to providers of care for their own benefit. Rather the statute is designed to aid the patients and clients of such facilities ...." ); *compare National Athletic Trainers' Ass'n, Inc. v. U.S. Dept. of Health and Human Services*, 455 F.3d 500, 503 (5th Cir. 2006) (finding that Medicare beneficiaries and physician-providers have prudential standing where the purpose of the statute is to "standardiz[e] the quality of therapy services provided to Medicare beneficiaries").

## II.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE COMPLAINT BECAUSE PLAINTIFFS' CLAIMS ARE NOT RIPE FOR REVIEW.

A related element of Article III's case or controversy requirement is that a dispute must be ripe for judicial consideration - that is, a controversy must have "matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. at 499 n.10; *see also Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 295 (5th Cir. 2006) (courts should dismiss a case for lack of ripeness "when the case is abstract or hypothetical") (internal quotation marks omitted). A claim is "not ripe for adjudication if it rests upon contingent future events that may not occur as

anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citations omitted). In essence, Plaintiffs are asking the Court to issue an advisory opinion. Such relief is clearly foreclosed because "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *Amer. Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.*, 280 F.2d 453, 461 (5th Cir.1960).

Plaintiffs' claims are anything but ripe. The DMEPOS supplier Plaintiffs do not allege that they have submitted a bid to provide goods or services under the competitive bidding program or that their bids have been rejected (nor could they, because the bid submission and selection process are not completed). For the Medicare beneficiary Plaintiffs, the Court must speculate how each hypothetical non-selection of a supplier would result in allegedly lower quality goods and services and how those goods and services might harm each of them. Such a string of hypotheticals is simply too abstract for judicial consideration. *See Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d at 295; *see also Shields v. Norton*, 289 F.3d 832, (5th Cir. 2002) (where a complaint rests on "a hypothesis" or "some saber rattling, but nothing more," courts "must not proceed until the issue is ripe"). The speculation would not end there, however, as the Court would also have to guess how the hypothetical bids and nonexistent contracts also might create unlawful classifications of similarly situated small and large DMEPOS providers and Medicare and non-Medicare beneficiaries. Plaintiffs' claims thus rest entirely "upon

15

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PREMIER MEDICAL SUPPLIES, INC. | |
| Plaintiff, | |
| v. | Case No. 1:07-CV-3809 |
| MICHAEL O. LEAVITT, Secretary of the Department of Health and Human Services et al., | JUDGE PATRICIA A. GAUGHAN MAGISTRATE JUDGE BAUGHMAN |
| Defendants | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff Premier Medical Supplies, Inc. ("Premier") comes before the Court seeking an advisory opinion concerning the legality of an amendment to the Medicare statute that establishes a competitive bidding program designed to allow Medicare beneficiaries to obtain high quality durable medical equipment, prosthetics, orthotics and supplies[1] ("DMEPOS") at competitive prices. Premier speculates that this as yet unimplemented program in which Premier has been allowed to compete may cause it financial hardship because Premier may not earn the same rate of return as it did prior to Congress' enactment of the competitive bidding program. Premier alleges this potential hardship despite its apparent failure to engage in the bidding process, before

---

[1] Durable medical equipment, prosthetics, orthotics and supplies generally includes "iron lungs, oxygen tents, hospital beds, and wheelchairs, . . . blood-testing strips and blood glucose monitors . . . [and] seat-lift chair[s] . . . ." 42 U.S.C. § 1395x(n).

1

lacks jurisdiction because Premier's claims fail to satisfy the constitutional requirements of standing and ripeness. Premier's alleged injuries are speculative and not imminent. Even if Premier's alleged injuries were imminent, Premier would still lack prudential standing because its interests fall outside the "zone of interests" the MMA seeks to protect.

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984). This requirement is "founded in concern about the proper — and properly limited — role of the courts in a democratic society," <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975), and "is built on a single basic idea — the idea of separation of powers." <u>Allen</u>, 468 U.S. at 752. Without the case or controversy requirement and related limitations, "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." <u>Id.</u> at 500.

As part of the case or controversy requirement, Plaintiffs must have standing. <u>Lujan</u>, 504 U.S. at 559-60; <u>see also</u> <u>Clinton v. City of New York</u>, 524 U.S. 417, 429 (1998). "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." <u>Warth</u>, 422 U.S. at 498. As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing these elements. <u>Midwest Media Property, L.L.C. v. Symmes Tp., Ohio</u>, 503 F.3d 456, 461 (6th Cir. 2007).

### A. Plaintiff Lacks Constitutional Standing Because It Has Failed to Demonstrate That It Has Suffered an Actual or Imminent Injury

Premier speculates about the potential injury which it might suffer once the DMEPOS competitive bidding program is ultimately implemented. As that program is yet to be finally

implemented - indeed, bids have not yet been selected - they cannot present an actual injury.  To meet the "irreducible constitutional minimum of standing," a plaintiff must demonstrate that he has suffered an "injury in fact" that is "fairly traceable" to the conduct of the defendant and which is "redressable by a favorable decision" of the court.  <u>Lujan</u>, 504 U.S. at 560-61.  The alleged injury must be concrete and particularized as well as "actual or imminent, not conjectural or hypothetical."  <u>Id.</u> at 560 (quotations omitted); <u>see also</u> <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 103 (1983) (threat of injury must be "real and immediate").  Here, Premier has not alleged injuries that are actual or imminent, nor could it.  Rather, Premier speculates about potential injuries that it might suffer once the DMEPOS competitive bidding program is implemented several months from now.

Premier's alleged injuries are purely speculative.  Premier argues that "[i]t is <u>unknown</u> whether the competitive bidding program requirement to ensure that suppliers are able to provide suitable goods and services . . . will be inhibited or prevented by implementation of the MMA."  Compl. ¶ 68 (emphasis added).  Likewise, Premier contends that "one-half or more suppliers <u>may be</u> wiped out if the Medicare competitive bidding scheme is allowed to go forward," Compl. ¶ 56 (emphasis added), and that it "<u>risks</u> being shut out of the Medicare program," Compl. ¶ 61 (emphasis added).

Premier's allegations of injury never transcend conjecture.  The bidding process is not yet complete as Defendants have not selected bids.  Additionally, no contracts have been awarded, and the program has not been put into place.  <u>See</u> CMS, Competitive Acquisition for DMEPOS, Overview, Timeline, <u>available at</u> http://www.cms.hhs.gov/CompetitiveAcqforDMEPOS/

01a_Timeline.asp.  Further, it is not clear that Premier will suffer any injury (let alone a legally

cognizable one) once the DMEPOS competitive bidding program is implemented, as Premier's

Complaint is silent about whether it submitted a bid.  Thus, Premier's allegation that it faces

"imminent" injury is demonstrably false.  Compl. ¶ 19.  In a materially identical case, another

court has recently dismissed a challenge to the DMEPOS competitive bidding program for lack

of ripeness.  See Hewitt v. Leavitt, 3:07-CV-1038-K, (N.D. Tex. Dec. 2, 2007).

 In contrast to the alleged harm that Premier predicts may befall it as a small supplier, both

the statute and the regulations expressly protect the interests of small suppliers.  See 42 U.S.C. §

1395w-3(b)(2)(A)(ii) (requiring the Secretary to take into account the needs of small providers in

developing financial standards that must be met by small providers); id. § 1395w-3(b)(6)(D)

(requiring the Secretary to take appropriate steps to ensure that small suppliers are considered in

the competitive bidding program); see also 42 C.F.R. § 414.414(g) (creating special rules for

participation in the competitive bidding program by small suppliers, including setting a target

number of small suppliers, and awarding contracts to small suppliers if their composite bids[10] are

higher for each product category that are higher than the pivotal bid, if necessary).

 In addition to the statutory protections provided to small suppliers, Defendants

demonstrated the successful participation of small suppliers in the competitive bidding program

during the test period, when "three-quarters of the DMEPOS [contract] winners were small

businesses and beneficiary satisfaction remained high."  See H.R. Rep. No. 108-178 (II), at Title

III § 302.  Further, Medicare will continue to pay for some of the equipment provided to

---

 [10]  A composite bid is "the sum of a supplier's weighted bids for all items within a product category for purposes of allowing a comparison across bidding suppliers."  42 C.F.R. § 414.200.

beneficiaries even after the competitive bidding contracts have been awarded if certain conditions

are met.  Oxygen, for example, is a covered supply.  Therefore, if Premier elects to become a

"grandfathered" supplier and the beneficiary elects to continue receiving the item, then Premier

can still furnish the item to the beneficiary.[11]  See 42 U.S.C. § 1395w-3(a)(4); 42 C.F.R. §

414.408.  Accordingly, Premier cannot demonstrate that it is "difficult or impossible" for it to

compete in the competitive bidding program.

The speculative nature of Premier's claimed injuries requires a finding that it lacks

standing to challenge the competitive bidding program, either facially or as applied.  "A facial

challenge to a legislative Act is, of course, the most difficult challenge to mount successfully,

since the challenger must establish that no set of circumstances exists under which the Act would

be valid."  U.S. v. Salerno, 481 U.S. 739, 745 (1987).  Premier simply cannot meet this heavy

burden here.  If Premier actually submitted a bid, either alone or as part of a composite bid, it

may be awarded contracts under the competitive bidding program.  Likewise, Premier lacks

standing to challenge the statute's implementation.  Premier identifies no illegal act by the

Secretary in setting up the program and cannot show that any bid that Premier may have chosen

to submit will be rejected.  See Yeager v. General Motors Corp., 265 F.3d 389, 395 (6th Cir.

2001) (finding that "potential future injury" which is "too speculative" fails to satisfy Article III

standing).  Premier cannot show that the competitive bidding program will b implemented in

---

[11]  Any supplier who furnishes "durable medical equipment or . . . oxygen or oxygen
equipment on a rental basis to a beneficiary prior to the implementation of a competitive bidding
program . . . may elect to continue furnishing the item as a grandfathered supplier."  42 C.F.R. §
414.408 (emphasis provided).  The Complaint makes clear that Premier furnishes, among other
covered supplies, oxygen equipment and supplies to Medicare beneficiaries.  See Compl. at ¶ 9.

such a manner that they will be injured.

**B.    Plaintiff Lacks Prudential Standing Because It Has Failed to Demonstrate that Its Alleged Injuries Fall Within the Zone Of Interests Protected By the Statute**

In addition to constitutional standing requirements, courts have developed prudential limitations on standing.  To satisfy the requirements of prudential standing, a plaintiff must show, inter alia, that the injury he alleges falls within the "zone-of-interest protected by the law invoked."  ACLU v. Nat'l Sec. Agency, 493 F.3d 644, 677 (6th Cir. 2007) (internal quotations omitted); see also Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 523 (1991).  A supplier's ability to provide DMEPOS to Medicare beneficiaries at a price of the supplier's choosing is not within the "zone of interests protected by the law invoked."  Id.  see also Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 524-26 (1991) (where a plaintiff's interest in "maximizing its profits, apparently by avoiding competition with other manufacturers" would "be more likely to frustrate than to further statutory objectives," his interests are outside the statute's "zone of interests" and he lacks prudential standing).

The gravamen of Premier's Complaint is that, as a small supplier of DMEPOS, it might ultimately be at a competitive disadvantage to larger suppliers.  See Compl. ¶ 27.  Congress enacted Section 302 of the MMA to counteract the waste, fraud, and abuse that it found to be present under the previous DMEPOS fee schedule payment method.  See H.R. Rep. No. 108-178 (II), at Title III § 302.  The statute is not intended to (nor does it) guarantee DMEPOS suppliers, like Premier, an expected return on their business investments.  Cf. Green v. Cashman, 605 F.2d 945, 946 (6th Cir. 1979) ("We do not find in the statute authorizing Medicare . . . any legislative intention to provide financial assistance to providers of care for their own benefit.  Rather the

statute is designed to aid the patients and clients of such facilities . . . .").  Indeed, safeguarding

suppliers' rates of return would be precisely antithetical to the MMA's purpose of reducing

Medicare's cost.[12]

### III.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE COMPLAINT BECAUSE PREMIER'S CLAIMS ARE NOT RIPE FOR REVIEW

A related element of Article III's case or controversy requirement is that a dispute must be

ripe for judicial consideration - that is, a controversy must have "matured sufficiently to warrant

judicial intervention."  Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975); see also Ammex, Inc. v.

Cox, 351 F.3d 697, 706 (6th Cir. 2003) ("The ripeness inquiry arises most clearly when litigants

seek to enjoin the enforcement of statutes, regulations, or policies that have not yet been enforced

against them.").  A claim is "not ripe for adjudication if it rests upon contingent future events that

may not occur as anticipated, or indeed may not occur at all."  Texas v. United States, 523 U.S.

296, 300 (1998) (internal quotation marks and citations omitted).  In essence, Premier asks the

Court to issue an advisory opinion.  Such relief is clearly foreclosed by the ripeness doctrine

which is designed, in part, to "protect the agencies from judicial interference until an

administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties."  Ammex, Inc., 351 F.3d at 706 (quoting Abbott Labs. v. Gardner, 387 U.S.

136, 148-49 (1967)).

---

[12]  For similar reasons, Premier could not state a viable claim under Rule 12(b)(6) of the
Federal Rules of Civil Procedure that Congress's enactment of the competitive bidding program
is itself unconstitutional because it has been long established that Congress is free to change the
terms of the Social Security Act, which includes the Medicare statute, at any time, Fleming v.
Nestor, 363 U.S. 603, 617-20 (1960), and because neither Premier nor any other entity has a
constitutional right to continued participation in Medicare under terms of its own choosing.
Whitney v. Heckler, 780 F.2d 963, 969-71 (11th Cir. 1986).

Premier's claims are anything but ripe. Premier does not allege that it has submitted a bid to provide goods or services under the competitive bidding program or that its bids have been rejected (nor could it, because the bid selection process is not completed). The speculation in which the Court would be required to engage in entertaining this action includes having to guess how the hypothetical bids and nonexistent contracts might create potential financial harm to small suppliers of DMEPOS. As the competitive bidding program has "not yet been enforced" against Premier, its claims are particularly situated for a lack of ripeness finding by the court. Ammex, Inc., 351 F.3d at 706.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be granted, and Plaintiff's suit should be dismissed.

Dated: February 19, 2008

Respectfully submitted,

JEFFREY BUCHOLTZ
Acting Assistant Attorney General

SHEILA M. LIEBER
Assistant Director, Federal Programs Branch

_____
STEPHEN J. BUCKINGHAM
Trial Attorney
Department of Justice, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7109
Washington, D.C.  20530
Tel: 202-514-4805
Fax: 202-616-8470
*Attorneys for Defendants*

OF COUNSEL:
LINDA KEYSER
MARCUS CHRIST
Attorneys
Department of Health and Human Services

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of June, 2008, I caused a true and correct copy of the foregoing REPLY IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION to be served upon the Defendants in this matter by sending the same via ECF to the following:

Kathryn L. Wyer
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC  20530
(202) 616-8475
kathryn.wyer@usdoj.gov

/s/ Stephen B. Kinnaird
Stephen B. Kinnaird (454271)