UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ASSOCIATION FOR HOMECARE; and ACE DRUG, INC., dba HOLLYWOOD MEDICAL SUPPLY,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL O. LEAVITT in his official capacity as Secretary of the Department of Health and Human Services, and KERRY M. WEEMS, in his official capacity as Acting Administrator for the Centers for Medicare & Medicaid Services, 200 Independence Ave., S.W. Washington, D.C.  20201,<br><br>Defendants. | Civil Action No. 08-992 (RMU) |

**NOTICE OF SUPPLEMENTAL AUTHORITIES**

Defendants respectfully submit this notice of supplemental authorities to advise the Court of two decisions issued yesterday in other cases challenging the DMEPOS Competitive Bidding Program: one by the United States Court of Federal Claims in All Florida Network Corp. v. United States, No. 08-441C (C.F.C.); and another by United States District Court for the Northern District of Texas in Scooters Unlimited & DME, Inc. v. Leavitt, No. 08-980 (N.D. Tex.).[1]

In All Florida Network Corp., the Court of Federal Claims dismissed the plaintiffs'

---

[1] The CFC's opinion and order dismissing the plaintiffs' claims in All Florida Network Corp. are attached hereto as Exhibits 1 and 2.  The Northern District of Texas's order denying a temporary restraining order in Scooters is attached as Exhibit 3.  Plaintiffs have previously filed a "notice of related case" in regard to each of these cases.  See dkt. #6 (Scooters Unltd.); #16 (All Florida Network Corp.).

claims for lack of subject matter jurisdiction pursuant to the statutory bar on judicial review of the "awarding of contracts" set forth in 42 U.S.C. § 1395w-3(b)(10)(B). Slip. op. at 8. The court rejected the plaintiffs' attempt to draw a "distinction between 'eligibility determinations' and 'the awarding of contracts' in this competitive acquisition program" and instead held "that eligibility determinations are part of the overall award scheme," and thus were covered under the preclusion of § 1395w-3(b)(10)(B). Slip op. at 7. Plaintiffs in this case have attempted to draw the same distinction, and their attempt should be rejected for the same reasons set forth in the CFC's opinion.

In <u>Scooters</u>, the court denied the plaintiffs' request for a temporary restraining order seeking to halt the July 1, 2008 initiation of payment under the DMEPOS Competitive Bidding Program, on the basis that the plaintiffs were unlikely to succeed on the merits of their claim. (The court stated its reasoning in greater detail at a hearing held on June 26, 2008, but the transcript of the hearing is not yet available.)

Dated: June 27, 2008

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
SHEILA LIEBER
Deputy Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel.  (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendants*

# In the United States Court of Federal Claims

Case No. 08-441C
(FILED: June 26, 2008)
TO BE PUBLISHED

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * *  * | |
| **ALL FLORIDA NETWORK CORP.**, *Plaintiff,* | Medicare Program; Social Security Amendments of 1965; Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS); competitive acquisition program; award of contracts; 42 U.S.C. § 1395w-3(b)(10); judicial review of administrative decisions; bid protest; preliminary injunction |
| v. | |
| **THE UNITED STATES OF AMERICA**, *Defendant.* | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | |

    **David E. Marko** and **Daniel L. Leyton**, Miami, Florida, and **Javier Talamo**, Hialeah, Florida, attorneys for Plaintiff.

    **David D'Alessandris**, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., attorney for Defendant. With him on the briefs were **Gregory G. Katsas**, Acting Assistant Attorney General, **Jeanne E. Davidson**, Director, **Reginald T. Blades, Jr.**, Assistant Director, and **Jamie B. Insley**, U.S. Department of Health and Human Services, of Counsel.

    **Lauren A. Weeman**, law clerk.

---

# ORDER

**BASKIR**, Judge.

    This is a post-award bid protest. Plaintiff, All Florida Network Corporation (AFNC), challenges a decision by the Centers for Medicare and Medicaid Services (CMS) disqualifying it from bidding in a competitive acquisition program to become a qualified supplier of certain Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS). The Government moves to dismiss the protest pursuant to Rules of the Court of Federal Claims (RCFC) 12(b)(1) on the ground that a specific provision

of the Social Security Amendments of 1965, Pub. L. No. 89-97, 79 Stat. 286 (July 30, 1965), precludes judicial review of contract award decisions made by CMS in the DMEPOS competitive acquisition program.

On June 26, 2008, the Court issued a bench ruling GRANTING the Government's motion to dismiss, DENYING as moot Plaintiff's pending emergency motion for a preliminary injunction, and DENYING as moot Ablecare Medical, Inc.'s pending motion to intervene. This Order summarizes the relevant facts of this bid protest and sets forth the reasons for our bench ruling.

## BACKGROUND

We summarize below only those facts necessary to place Plaintiff's bid protest in context and relevant to the disposition of the Government's motion. Unless indicated to the contrary, these facts are not in dispute for purposes of the Government's motion. The facts are derived primarily from the statement of facts included in the Plaintiff's Emergency Motion for a Preliminary Injunction (Pl. Emer. Mot.) and the Government's Motion to Dismiss (Def. Mot. to Dismiss), both filed on June 18, 2008. Additional details are provided in the briefs in support of these two motions.

**I.     Competitive Acquisition Program for DMEPOS Contracts**

CMS is the agency within the U.S. Department of Health and Human Services (HHS) responsible for overseeing and administering the national Medicare program. Def. Mot. to Dismiss at 2. The Medicare program, which was established as part of the 1965 Amendments to the Social Security Act (codified at 42 U.S.C. §§ 1395-1395hhh), provides payment for covered medical supplies and services, including certain DMEPOS. *Id.* The Social Security Act requires that the Secretary of HHS "establish and implement programs under which competitive acquisition areas are established through the United States for contract award purposes for the furnishing . . . of competitively priced [DMEPOS] items and services[.]" 42 U.S.C. § 1395w-3(a)(1)(A).

Pursuant to these competitive acquisition programs, DMEPOS suppliers submit bids offering to furnish their products and services for a set price. *Id.* § 1395w-3(b)(6)(B). In order to be considered for a contract award, each DMEPOS supplier is required to meet applicable quality and financial standards. *See id.* A bidder is to demonstrate its qualifications by submitting (1) an electronic bid for specific product categories identifying the amount of Medicare reimbursement they are willing to accept for each item in a product category and (2) certain financial information in hard copy form (including financial statements and credit reports). Pl. Emer. Mot. at 7 (citing 42 C.F.R. § 414.414, which discusses the eligibility requirements, quality standards and accreditation, financial standards, and evaluation of bids for the DMEPOS program).

Significantly for purposes of this bid protest, the statute provides that:

> There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise, of – . . . (B) the awarding of contracts under this section[.]

42 U.S.C. § 1395w-3(b)(10)(B).  In order to implement the DMEPOS competitive acquisition program, CMS issued a final rule on April 10, 2007.  Def. Mot. to Dismiss at 3 (citing 72 Fed. Reg. 17992).  This final rule specifically provides that "[t]here is no administrative or judicial review under this subpart of the . . . [a]warding of contracts."  42 C.F.R. § 414.424(a)(2).

The DMEPOS competitive acquisition program is being implemented in phases.  The first phase (Round One) took place in 2007 when competitive bidding was opened in the 10 largest metropolitan statistical areas (MSAs) in the United States.  42 U.S.C. § 1395w-3(a)(1)(B).  Plaintiff was a bidder in Round One, which included the Miami-Fort Lauderdale-Miami Beach competitive bidding area (the South Florida MSA).

CMS engaged the services of a Competitive Bidding Implementation Contractor (CBIC) to administer the bidding program as authorized by 42 U.S.C. § 1395w-3(b)(8).  Def. Mot. to Dismiss at 3.  The CBIC's role includes collecting the electronic bids and hard copy documentation submitted by bidders and communicating award decisions to bidders.  *Id.*  In Round One, CMS awarded 1,345 contracts to 325 winning suppliers.  *Id.*  These contracts are scheduled to take effect on July 1, 2008.  *Id.*  Bidders who were not awarded contracts will not be reimbursed for furnishing competitively bid items to Medicare beneficiaries within the competitive bidding areas.  Pl. Emer. Mot. at 13; *see also* Compl. at Ex. A.

**II.    All Florida Network Corporation's Bid and Disqualification**

AFNC is a network of 19 DMEPOS providers based in Miami, Florida.  These providers came together to form Plaintiff in 2007 for the purpose of bidding in the South Florida MSA.  Pl. Emer. Mot. at 7.  After formation, AFNC began preparing to successfully bid for DMEPOS contracts in Round One.  AFNC retained VGM Group – a national organization that provides support and guidance to Home Medical Equipment suppliers – to collect the bids from AFNC's primary providers and calculate its weighted network bid for each of the 10 product categories offered in Round One.  *Id.* at 8.  VGM also collected from AFNC's providers all of the financial information that had to be submitted in hard copy form along with the electronically-submitted bid.  *Id.* at 9.

AFNC submitted its bid electronically on July 19, 2007.  *Id.*  AFNC's bid was therefore submitted before the extended deadline of September 25, 2007.  Compl. at 2 n.1.  VGM contemporaneously submitted all hard copy information to the CBIC in one package sent via Federal Express Overnight Mail.  Pl. Emer. Mot. at 9.

Winning bidders were announced on March 20, 2008. *Id.* at 10. A letter of the same date from the CBIC to AFNC states that CMS was unable to accept AFNC's bid for two specific reasons: (1) AFNC "did not meet enrollment standards specified in 42 C.F.R. 424.57(c)" (BSE-1 disqualification code), and (2) AFNC "did not submit along with its bid the applicable financial documentation specified in the request for bids [(RFB)]" (BSE-4 disqualification code). Compl. Ex. A at 1-2.

AFNC contacted the CBIC on March 21, 2008, requesting details pertaining to its disqualification. The CBIC informed AFNC via telephone that the BSE-1 disqualification was "based on CMS' finding that one of AFNC's providers – Coast-to-Coast Medical Equip., Inc. [(CTC)] – was not eligible to participate in the bidding competition." Pl. Emer. Mot. at 10. The CBIC further advised that the BSE-4 disqualification was based on CMS' finding that five members of AFNC's network – specifically, CTC, Chori Corp., Dade Medical, Inc., Hometown Medical Equip. & Supplies, Inc., and R & T Medical – had not submitted all of the financial information required by the RFB. *Id.*

AFNC immediately conducted an internal investigation into these grounds for disqualification. AFNC confirmed that it had informed the CBIC several months earlier that CTC had withdrawn from the bidding network, invalidating the BSE-1 disqualification. *See id.* at 11; Compl. at Ex. B. In addition, according to AFNC, after conducting a "multi-layered internal and independent review," it confirmed that each of the financial documents CMS alleged was missing under the BSE-4 disqualification was included in the hard copy package mailed to the CBIC on July 19, 2007. *See* Pl. Emer. Mot. at 11 (citing Pl. App. 26, 28, 126-27, 130-31, 134-35).

AFNC contacted the CBIC on March 24, 2008, to convey this information. AFNC requested that CMS rescind the disqualification and consider its bid. *Id.* The CBIC stated that it would review AFNC's file and respond within 30 days. *Id.* On April 21, 2008, the CBIC sent a final decision to AFNC via email. *Id.* (citing Pl. App. at 18). This email does not mention the BSE-1 disqualification invoked by the CBIC on March 21, 2008. *See id.*; Pl. App. at 18. Rather, the email states:

> As requested, we have reexamined your bid(s), and have confirmed that 2005 income statement for Chori Corp.; 3 years income statements for Medical Respiratory Rentals, Inc.; and 3 years income statements for JAD Medical Equipment, Inc. are missing. Therefore, we continue to be unable to accept these bid(s).

Pl. App. at 18. We note that the list of missing financial documents allegedly provided verbally to AFNC on March 21, 2008, differs (with the exception of Chori Corp.) from the list provided in writing by the CBIC on April 21, 2008, just one month later. This inconsistency casts doubt on the accuracy of both reports.

AFNC contends that it submitted all required documentation to the CBIC in a timely manner. Compl. ¶¶ 27, 33. It thus argues that CMS' disqualification decision lacked a rational basis and was arbitrary and capricious. Compl. ¶ 42. Rather than arguing the merits, the Government has moved to dismiss the complaint in its entirety for lack of subject matter jurisdiction.

### III.   Procedural History

As noted above, Plaintiff received a final decision from CMS disqualifying it from bidding for the Round One DMEPOS contracts on April 21, 2008. Plaintiff did not at any time thereafter seek relief from the Government Accountability Office (GAO). Rather, Plaintiff filed a bid protest with this Court on June 17, 2008. The complaint is 14 pages in length and attaches certain documents pertaining to CMS' disqualification decision. The complaint requests, *inter alia*, that the Court award it a preliminary injunction "on an expedited basis before the Round One contracts become effective" on July 1, 2008. Compl. at 13. Plaintiff indicates that this preliminary injunction would "requir[e] that the United States offer Plaintiff the same standardized contract it offered to 'winning bidders'" in specific product categories. *Id.*

Plaintiff filed a separate emergency motion for a preliminary injunction and request for an expedited hearing on June 18, 2008. This emergency motion was filed shortly after the Government filed its motion to dismiss the same day. The Court's rules generally require that applications for a temporary restraining order and/or preliminary injunction must be filed together with the complaint. *See* Rules of the Court of Federal Claims (RCFC) App. B, ¶ 9. We will not stringently enforce this requirement.

The jurisdictional issue was fully briefed. During an initial status conference held on June 19, 2008, Plaintiff requested an opportunity to respond to the Government's motion to dismiss. Plaintiff filed that response (Pl. Resp.) on June 20, 2008. The Government filed its reply (Def. Rep.) on June 23, 2008. The Court held oral argument via telephone on June 26, 2008. At the close of oral argument, we ruled from the bench disposing of all pending motions.

### ANALYSIS

### I.   Standard of Review

Whether subject matter jurisdiction exists over Plaintiff's bid protest is a threshold question that must be addressed before proceeding to the merits. Jurisdiction is a prerequisite which must be met prior to considering any substantive issues. *See Moden v. United States*, 60 Fed. Cl. 275, 280 (2004), *aff'd*, 404 F.3d 1335 (Fed. Cir. 2005). The Court of Federal Claims is a court of limited jurisdiction as

defined by the Tucker Act, 28 U.S.C. § 1491.  Like other federal courts, this Court possesses only that power authorized by the Constitution and statute.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true the complaint's undisputed factual allegations and construes the facts in the light most favorable to the plaintiff.  *Figueroa v. United States*, 57 Fed. Cl. 488, 492 (2003) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The party asserting jurisdiction bears the burden of proof by a preponderance of the evidence.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

## II. Prohibition of Judicial Review of "the Awarding of Contracts" Pursuant to 42 U.S.C. § 1395w-3(b)(10)(B)

The Government moves to dismiss Plaintiff's bid protest on the ground that "Congress [] clearly and unambiguously prohibited review by this or any other court or administrative agency" of "the awarding of contracts" under the DMEPOS competitive bidding program when it enacted 42 U.S.C. § 1395w-3(b)(10)(B).  Def. Mot. to Dismiss at 1.  The Government argues that this Court "must give effect to the plain meaning of the statute[] because the language is clear and unambiguous" and find that it lacks jurisdiction to entertain Plaintiff's protest.  *Id.* at 6.

In response, Plaintiff argues that the statute does not "unambiguously" bar its claim.  Pl. Resp. at 2.  Plaintiff contends that it has brought this protest to challenge its "erroneous disqualification from the bidding competition" and that its challenge is separate from, and not included within, the plain meaning of "the awarding of contracts" as used in § 1395w-3(b)(10)(B).  *See id.*  The Court finds that Plaintiff's characterization of its bid protest is at odds with its request for a preliminary injunction that would "afford [it] the opportunity to sign the standardized contracts with Medicare that were offered to [the] 'winning bidders' . . . . "  Pl. Emer. Mot. at 1.  Plaintiff's argument is unavailing on other grounds as well.

It is a "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself."  *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).  "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."  *Id.*  The Government posits that the Congressional prohibition of judicial review of CMS' decision to disqualify Plaintiff's bid is "clear and explicit."  Def. Mot. to Dismiss at 6.  We agree.  We simply cannot conceive of a more concise way to bar review by this Court of CMS' decision.

Plaintiff attempts to impose ambiguity on the statutory provision by arguing that "eligibility determinations" or "qualifying mechanisms" are separate and distinct from "the awarding of a contract." Pl. Resp. at 3. In support, Plaintiff cites to *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084 (6th Cir. 1981). This Sixth Circuit case, which predates the Court of Federal Claims' exclusive bid protest jurisdiction pursuant to the Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, 110 Stat. 3870 (Oct. 19, 1996), is not persuasive authority. First, the case involved Tennessee law which limited the local government's power to reject bids for county contracts. *See id.* at 1090. Second, the portion of the opinion relied on by Plaintiff demonstrates that, contrary to the circumstances of this protest, the challenger in *Owen of Georgia* was found to have been in compliance with the bidding qualifications established for the contract at issue. *Id.* at 1093. Despite offering the lowest bid, the challenger was rejected solely because it was an out-of-state firm whereas the winning bidder was a "local concern." *Id.* at 1090. The dispute before the Court in this bid protest is whether Plaintiff in fact complied with the requirements of the RFB and submitted all required financial documentation. *Owen of Georgia* does nothing to advance Plaintiff's argument.

We must also reject Plaintiff's argument because we are not persuaded that there is a distinction between "eligibility determinations" and "the awarding of contracts" in this competitive acquisition program. Rather, we find that eligibility determinations are part of the overall award scheme. This is evidenced by a CMS regulation stipulating the "Conditions for awarding contracts," 42 C.F.R. § 414.414, in the DMEPOS program. This regulation sets forth the eligibility standards for suppliers seeking to bid for DMEPOS contracts and specifies that contract awards may only be made to suppliers who meet certain "quality standards and accreditation" as well as "financial standards." *Id.* § 414.414(c)-(d). The regulation also sets forth standards for the evaluation of bids. *Id.* § 414.414(e). Plaintiff does not here challenge the terms of the RFB nor take issue with the substance of the bidding qualifications established by CMS. Instead, Plaintiff challenges CMS' determination that it did not meet those qualifications. Plaintiff is therefore directly challenging a CMS decision regarding "the awarding of contracts."

Plaintiff also argues that where, as here, the Government concludes that Congress intended to preclude all judicial review of administrative decisions, it faces the "heavy burden" of overcoming the strong presumption in favor of such review. *See* Pl. Resp. at 2 (citing *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975)). Plaintiff contends that the Government has not met this burden. *Id.* The Court disagrees. Plaintiff is correct to point out that there is a "strong presumption in favor of judicial review of administrative action." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) ("It is presumable that Congress legislates with knowledge of our basic rules of statutory construction, and [] our well-settled presumption favoring interpretations of

statutes that allow judicial review of administrative action . . . . "). However, this presumption may be overcome by the language of the statute. *See id.* at 498-99. Having found that the plain language of § 1395w-3(b)(10)(B) is an express prohibition of judicial review, we must reject Plaintiff's argument to the contrary.

Furthermore, the strong presumption in favor of judicial review of administrative decisions may also be overcome by "'the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'" *Carolina Med. Sales, Inc. v. Leavitt*, No. 07-1298, 2008 U.S. Dist. LEXIS 46906, at *14 (D.D.C. June 19, 2008) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984)). In *Carolina Medical Sales*, the plaintiff challenged the Government's contention that § 1395w-3(b)(10) precluded judicial review of the Secretary of HHS' decision to select mail order (as opposed to all) diabetic suppliers for inclusion in the DMEPOS competitive bidding program. *Id.* at *1-2. The court instructed that "§ 1395w-3(b)(10) should be interpreted with both a view to its individual subparts and a mind to its structure as a whole." *Id.* After analyzing the provision in this broader context, the court concluded that "Congress contemplated a detailed, scheduled deployment of the competitive bidding program and imbued the Secretary with the authority – immune from judicial review – to economize by accelerating the introduction of cost-effective items and services." *Id.* at *15-16.

Congress intended the Secretary of HHS to have the authority to expeditiously implement the DMEPOS bidding program. *See id.* at *25. Congress therefore precluded judicial review of specific decisions, including those pertaining to "the awarding of contracts." Permitting litigants like Plaintiff to bring protests by parsing the categories of decisions precluded from judicial review into challengeable sub-components would "frustrate Congress' intent and potentially hamstring the Secretary's ability" to do just that. *Id.* at *25-26. We therefore must give effect to Congress' clear intent with respect to § 1395w-3(b)(10)(B) and dismiss this bid protest.

## CONCLUSION

We recognize that an examination of the merits of this bid protest might reveal that Plaintiff was wrongly disqualified by Government mishandling of its papers. That is the price Plaintiff must pay for Congress' deliberate decision to prohibit such review. In light of the explicit mandate from Congress set forth in 42 U.S.C. § 1395w-3(b)(10)(B), we are constrained to conclude that Plaintiff has not met its burden of proving by a preponderance of the evidence that this Court has jurisdiction to entertain its claim.

Therefore, as ruled from the bench during oral argument, **the Government's motion is GRANTED.  The Clerk of the Court is hereby ORDERED to DISMISS the complaint in its entirety.  Furthermore, we DENY as moot Plaintiff's motion for a preliminary injunction and Ablecare Medical, Inc.'s pending motion to intervene.**

**IT IS SO ORDERED.**

                                                 s/  Lawrence M. Baskir
                                                 LAWRENCE M. BASKIR
                                                             Judge

# In the United States Court of Federal Claims

No. 08-441 C

**ALL FLORIDA NETWORK CORP.,**

                                                        **JUDGMENT**

v.

**THE UNITED STATES**

      Pursuant to the court's Published Order, filed June 26, 2008, granting the Government's motion to dismiss,

      IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that the complaint is dismissed.

                                                      John S. Buckley
                                                      Acting Clerk of Court

**June 26, 2008**                    By:     s/Lisa L. Reyes

                                                       Deputy Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of <u>all plaintiffs</u>.  Filing fee is $455.00.

IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



| | § | |
|---|---|---|
| SCOOTERS UNLIMITED AND DME INC., et al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:08-CV-980-M N |
| MICHAEL O. LEAVITT, et al., | § § § | |
| Defendants. | § § | |

### ORDER

Before the Court is Plaintiff's Motion for a Temporary Restraining Order, filed June 20, 2008. Having considered the Motion, oral argument, and applicable law, and for the reasons stated on the record, the Court is not persuaded that there is a substantial likelihood of success on the merits to support a temporary restraining order. Accordingly, the Court DENIES Plaintiff's request for a temporary restraining order.

**SO ORDERED.**

**DATED:** June 26, 2008.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS